UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| K.J., | Case No. 20-cv-03245-LB |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | Re: ECF No. 24, 26 |

**INTRODUCTION**

The plaintiff K.J. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his claim for social-security disability insurance (SSDI) benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgement, the Commissioner opposed the motion and filed a cross-motion for summary judgment, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument. The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross motion, and remands for further proceedings.

---

[1] Compl. – ECF No. 1 at 1–2. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 24; Cross-Mot. – ECF No. 26; Reply – ECF No. 27.

1

United States District Court
Northern District of California

## STATEMENT

### 1. Procedural History

The plaintiff filed an application for SSDI benefits in March 2015.[3] The Commissioner denied his claim on July 14, 2015, and again on December 31, 2015.[4] On January 4, 2016, the plaintiff asked for a hearing before an Administrative Law Judge (ALJ).[5] On October 20, 2016, the ALJ held an initial hearing and heard testimony from a vocational expert (VE) and the plaintiff.[6] The ALJ issued an unfavorable decision on March 29, 2017.[7] On May 24, 2017, the Appeals Council denied the plaintiff's request for a review, and the ALJ's decision became the final administrative decision.[8] The plaintiff then filed a civil action seeking judicial review of the Commissioner's decision July 26, 2017, and the district court remanded the case for further proceedings on October 24, 2018.[9] On remand, the ALJ held a hearing on November 19, 2019 and issued a second unfavorable decision on March 4, 2020.[10] The Appeals Council then did not assume jurisdiction within 60 days, so the ALJ's decision became the final administrative decision. The plaintiff filed this action on May 13, 2020, and the parties each moved for summary judgment.[11] All parties consented to the undersigned's jurisdiction.[12]

---

[3] AR 68. Administrative Record (AR) citations refer to the page numbers in the bottom right-hand corner of the AR.

[4] AR 80–81, 96.

[5] AR 110–11.

[6] AR 28.

[7] AR 7.

[8] AR 1.

[9] AR 617–55.

[10] AR 538, 517.

[11] Compl. – ECF No. 1; Mot. – ECF No. 24; Cross-Mot. – ECF No. 26.

[12] Consent Forms – ECF Nos. 10, 12.

## 2. Medical Records

The plaintiff contended that he is disabled due to post-traumatic stress disorder (PTSD), scoliosis, back pain, asthma/allergies, and joint pain.[13] The following medical records were submitted: (1) treatment records from VA/San Francisco Medical Center;[14] (2) a comprehensive physical evaluation by Soheila Benrazavi, M.D.;[15] (3) comprehensive psychiatric evaluation by Melody Samuelson, Psy.D.;[16] (4) office treatment records from VA/San Francisco Medical Center;[17] (5) case development worksheet from the DDS;[18] (6) a medical-source statement from Kirk Andrus, M.D.;[19] a medical-source statement from Kimberly Ward, LCSW;[20] and hospital records from the Department of Veteran's Affairs (VA).[21]

Because the plaintiff challenges the ALJ's weighing of the medical records, this order recounts the disputed opinions fully.

### 2.1   Department of Veterans Affairs

In its most recent rating decision — issued on April 14, 2014 — the VA designated the plaintiff as "permanently and totally disabled."[22] The VA described his disabilities as follows: low-back strain with associated disk herniation (20-percent disabling), PTSD with secondary panic disorder and depression (70-percent disabling), and left-lower-extremity radiculopathy (10-percent disabling).[23] The VA determined that the plaintiff's disabilities rendered him unemployable as of August 8, 2013.[24]

---

[13] AR 68.

[14] AR 318–54.

[15] AR 355–59.

[16] AR 360–66.

[17] AR 367–95.

[18] AR 396–405.

[19] AR 406–10.

[20] AR 411–13.

[21] AR 416–516.

[22] AR 175.

[23] AR 172–73.

[24] AR 297.

### 2.2    Kirk G. Andrus, M.D. — Treating Physician

Dr. Andrus has been the plaintiff's primary-care physician at the VA since 2011. In his medical-source statement, Dr. Andrus diagnosed the plaintiff with "chronic back pain/compressed disk" that included symptoms where the plaintiff "experiences pain to lower back, can't sit or stand for extended periods of time" and which "exacerbates fatigue." The plaintiff experienced "[d]ull pain with episodes in which it spikes then comes back down. Pain is constant. Worse with work or activity. Pain affects sleep." Additionally, the plaintiff was "not able to sit in [a] chair for long periods," and pain was "[e]licited when palpating lumbar sacral area, left side." Dr. Andrus prescribed Etodolac at 400mg, noting that it made the plaintiff tired.[25]

Dr. Andrus reported that the plaintiff could walk only one city block without rest or severe pain, sit for only ten minutes at a time, and stand for only ten minutes at a time. Within an eight-hour day, he could sit for less than two hours and stand for the same amount of time, and he needed to walk for five minutes every five minutes. Dr. Andrus noted that the plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking. Additionally, because of his muscle weakness, pain and numbness, and the adverse effects of his medication, the plaintiff would also require unscheduled, twenty-minute breaks from work on an hourly basis.[26]

Dr. Andrus reported that the plaintiff could not lift and carry fifty pounds, could rarely lift twenty pounds, could occasionally lift ten pounds, and could frequently lift less than ten pounds. The plaintiff could occasionally twist, climb stairs, and climb ladders, and could rarely stoop, crouch, or squat.[27]

Dr. Andrus reported that the plaintiff's impairments lasted or could be expected to last at least twelve months and that emotional factors contributed to the severity of his symptoms and functional limitations.[28] When asked to identify any psychological conditions affecting the plaintiff's physical condition, Dr. Andrus marked "Depression" and wrote "PTSD" under

---

[25] AR 407.

[26] AR 408.

[27] AR 409.

[28] AR 407.

"Other."[29] Dr. Andrus noted that the plaintiff would be "incapable of even 'low stress' work" because of his PTSD, and that his impairments would likely produce "good days" and "bad days."[30] The plaintiff's symptoms were severe enough to interfere with his attention and concentration, and he would likely be "off task" more than twenty-five percent of a given workday and absent from work three days per month.[31]

### 2.3    Melody Samuelson, PsyD — Examining Psychiatrist

Dr. Samuelson conducted a complete psychiatric examination of the plaintiff and submitted a summary report to DSS on June 7, 2015.[32] She described the plaintiff as a "slightly overweight, somewhat fit male."[33] She described him as a "combat soldier with multiple traumas and depression with severe PTSD" who reported serving in Iraq where he "saw Marines die."[34] Dr. Samuelson noted that the plaintiff showed signs of "psychomotor retardation" because his "range of motion was extremely slow in the chair."[35] At the time of the examination, the plaintiff's chief complaints were PTSD, depression, and anxiety.[36] Dr. Samuelson's diagnostic impression was that the plaintiff showed signs of PTSD, chronic major depressive disorder, and "pain disorder due to a general medical condition."[37] Dr. Samuelson noted that the plaintiff "presented as genuine and not feigning symptoms."[38]

In her functional assessment, Dr. Samuelson reported that the plaintiff would have moderate difficulty performing simple and repetitive tasks. She also opined that the plaintiff would have marked difficulty with the following tasks: (1) performing complex and detailed tasks; (2) working with the public; (3) working with supervisors and co-workers in general; (4) maintaining

---

[29] *Id.*

[30] AR 410.

[31] *Id.*

[32] AR 360.

[33] AR 362.

[34] AR 365, 364.

[35] AR 362.

[36] AR 361.

[37] AR 364.

[38] AR 365.

United States District Court
Northern District of California

attention, concentration, persistence and pace; (5) associating with day-to-day work activity, including attendance and safety; (6) accepting instruction from supervisors; and (7) performing work activities without special or additional supervision. Dr. Samuelson also indicated that the plaintiff would have mild to marked impairment in his ability to maintain regular attendance in the workplace and perform activities on a consistent basis. Dr. Samuelson concluded that the plaintiff "would not be appropriate in a work setting with the exception of a structured setting with professionals trained to manage disabled employees."[39]

### 3.  Non-Medical Evidence

Tiffany Outerbridge is married to the plaintiff and has known him for 22 years. Ms. Outerbridge submitted a third-party function report on September 17, 2015.[40]

Ms. Outerbridge reported that the plaintiff experienced extreme back pain and headaches "constantly," five days a week.[41] The plaintiff could walk an eighth of a mile with labored breathing before needing to rest for 10 to 15 minutes.[42] He "only sle[pt] [four] hours a night but will fall asleep during the day without acknowledging the need to sleep."[43] She noted that he did not trust people and was moody.[44] The plaintiff wore "sweats," bathed only one to two times per week, and would let his hair grow out.[45] She needed to remind him to shower.[46] Before his condition, the plaintiff had an "engaging personality" and was a "great multitasker," and "communication was more frequent."[47]

---

[39] *Id.*

[40] AR 241.

[41] AR 248.

[42] AR 246.

[43] AR 242.

[44] AR 241.

[45] AR 242.

[46] AR 243.

[47] AR 242.

Ms. Outerbridge stated that the plaintiff could pay attention for "10 min[utes] [at the] absolute most," could follow written instructions "with great effort [and] with extra time" and did not follow spoken instructions.[48] The plaintiff did not "handle stress well," and would shut down or lash out.[49] The following activities are affected by the plaintiff's condition: lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, completing tasks, concentration, and getting along with others.[50]

Ms. Outerbridge also wrote that the plaintiff vacuumed, washed dishes, dusted, did laundry, and cooked at home, but he would not complete his chores "unless he has all day to do it."[51] The plaintiff did not do house or yard work if his back hurt.[52] The plaintiff shopped twice a week for an hour for food and miscellaneous items.[53] His hobbies were watching TV and listening to music.[54] Ms. Outerbridge reported that he "refuse[d] to engage" in social activities beyond introductions.[55]

### 4.  Administrative Proceedings and Prior District Court Proceedings

#### 4.1  Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations (DDE), one related to the plaintiff's initial claim for disability and a second at the reconsideration level.[56]

At the initial level, Dr. Yanira Olaya determined that the plaintiff was not disabled.[57] Based on her review of the plaintiff's records and speaking with him on the phone, Dr. Olaya determined

---

[48] AR 246.

[49] AR 247.

[50] AR 246.

[51] AR 243.

[52] AR 244.

[53] *Id.*

[54] AR 245.

[55] AR 246.

[56] AR 68, 83.

[57] AR 80.

that the plaintiff's primary impairment, his spine disorder, was non-severe.[58] Dr. Olaya analyzed the plaintiff's residual-functional capacity (RFC) and found that he was moderately limited in his ability to do the following: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal workday and workweek without interruptions from psychologically-based symptoms; (5) interact appropriately with the general public; (6) get along with co–workers or peers without unduly distracting them or exhibiting behavioral extremes; and (7) respond appropriately to changes in the work setting.[59]

Dr. Olaya noted that she found Ms. Ward's assessment to be overly restrictive.[60] Based on Dr. Olaya's assessment, the plaintiff could be a (1) scale operator, (2) basket filler, or (3) Mexican food maker.[61]

In the second DDE, Drs. Allen and Colsky confirmed the initial finding that the plaintiff's alleged back and joint pain was not severe.[62] Dr. Colsky's psychiatric assessment closely mirrored Dr. Olaya's and included the seven areas of moderate impairment.[63]

### 4.2   Administrative Hearings

The ALJ held a hearing on November 19, 2019. The plaintiff and VE George Bluth testified.[64]

#### 4.2.1   Plaintiff's Testimony

In response to the ALJ's questions, the plaintiff testified that he lived with his wife and two children, ages 9 and 7, and that VA disability benefits were his only source of income.[65] His wife

---

[58] AR 74–81.

[59] AR 76–78.

[60] AR 78.

[61] AR 80.

[62] AR 89.

[63] AR 92–94.

[64] AR 538–77.

[65] AR 545–46.

United States District Court
Northern District of California

worked part-time and was a full-time student.[66] He had a driver's license and was able to drive himself to the hearing.[67]

The plaintiff has worked as a part-time supervisor for UPS, as a full-time security guard for Rancho Santa Fe Protective Services, as a quality assurance representative for a vitamin company, and as an ordinance technician in the military.[68]

The plaintiff testified that in the past month, his back had worsened and that he had been offered surgery but did not want it. At the time of the hearing, the plaintiff was in therapy. He had been taking Wellbutrin to control his PTSD symptoms but the medication, while helpful, "spiked [his] blood pressure to a point where [he] couldn't take it" because "[it] was endangering [his] life."[69]

The plaintiff also said that he was currently suffering from anxiety, which had started at the beginning of the month and intersected with his irritability.[70] He added that he was currently "in a depressive state" that had "just started a couple weeks ago," and was "back to barely functioning."[71] He had trouble concentrating and "had just been diagnosed with ADD."[72]

The plaintiff testified that he needs to lie down in the afternoon for approximately three hours because he becomes "exhausted." He needed "to stretch probably eight times a day" for approximately ten minutes and that he could stand for approximately thirty minutes, "and then [he] might have to squat down."[73]

When asked if his condition had remained the same or worsened since the VA's original disability decision, he said that his condition had worsened.[74]

---

[66] AR 546.

[67] Id.

[68] AR 546–49.

[69] AR 553.

[70] AR 555.

[71] AR 551.

[72] AR 556.

[73] AR 559.

[74] AR 560.

United States District Court
Northern District of California

### 4.2.2   VE's Testimony

VE George Bluth testified that the plaintiff's past work included (1) security guard, and (2) package delivery supervisor.[75]

The ALJ posed the first hypothetical to the VE: "a hypothetical individual of the plaintiff's age, and education, and who has the past jobs that you just described," limited by the following: (1) "work at the light exertional level;" (2) "cannot climb ladders, ropes, or scaffolds," (3) "perform other postural maneuvers such as stooping, crouching, and crawling on an occasional basis," (4) avoidance of "concentrated exposure to pulmonary irritants such as dust, fumes, and gasses," (5) "simple, routine tasks," and (6) "little contact and only superficial interaction with" supervisors and coworkers.[76] The VE testified that such an individual could not perform any of the plaintiff's past work and that the following jobs were available: (1) office helper, (2) electronics worker, and (3) routing clerk.[77]

The ALJ posed a second hypothetical to the VE. In addition to the conditions of the previous hypothetical, the person was "limited to performing work at the sedentary level." The VE responded that the following jobs were available: (1) account clerk, (2) document preparer, and (3) circuit board assembler.[78]

The ALJ then posed a third hypothetical to the VE. In addition to the conditions in hypothetical two, the person was "off-task or non-effective 20 percent of the workday or workweek."[79] Under this hypothetical, the VE testified that there were no jobs available.[80]

The plaintiff's representative questioned the VE. "If the person needed a sit/stand option at will every 20 minutes . . . , would any of these jobs be available?"[81] The VE responded that the electronics worker and the circuit board assembler would have sit/stand options but that the

---

[75] AR 570.

[76] AR 570–71.

[77] AR 571.

[78] *Id.*

[79] AR 572.

[80] *Id.*

[81] AR 572–73.

United States District Court
Northern District of California

number of available jobs would be reduced by half. The plaintiff's representative refined the hypothetical: if "the hypothetical worker would miss work one day a week." The VE testified that there were no jobs available to such an individual.[82]

### 4.2.3   ALJ Findings

The ALJ analyzed the five-step process to determine whether the plaintiff was disabled and concluded that he was not.[83]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of February 2, 2010.[84]

At step two, the ALJ found that the plaintiff had the following severe impairments: (1) degenerative disk disease; (2) asthma; (3) posttraumatic stress disorder; and (4) depressive disorder.[85]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment.[86]

Before reaching step four, the ALJ determined the plaintiff's RFC:

> The plaintiff had the [RFC] to perform light work with the following limitations: no climbing of ladders, ropes or scaffolds, no more than occasional climbing of ramps and stairs, no more than occasional balancing, stooping, kneeling, crouching and crawling, with the need to avoid concentrated exposure to pulmonary or respiratory irritants, no greater than simple repetitive tasks, with no public contact, and no greater than superficial interaction with coworkers and supervisors.[87]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[88]

At step five, the ALJ found that the following jobs were available to the plaintiff: (1) office helper, (2) electronics worker, and (3) routing clerk.[89]

---

[82] AR 573.

[83] AR 520–21, 532.

[84] AR 522.

[85] *Id.*

[86] AR 523.

[87] *Id.*

[88] AR 531.

[89] AR 532.

United States District Court
Northern District of California

1    The ALJ found the plaintiff "capable of making a successful adjustment to other work that

2  exists in significant numbers in the national economy" and concluded that the plaintiff was "not

3  disabled."[90]

4                                    **STANDARD OF REVIEW**

5    Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

6  Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set

7  aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or

8  are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d

9  586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than

10  a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

11  might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

12  Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the

13  [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293

14  (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a

15  different outcome, the court must defer to the ALJ's decision and may not substitute its own

16  decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not

17  reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d

18  1104, 1111 (9th Cir. 2012).

19                                      **GOVERNING LAW**

20    A claimant is considered disabled if (1) he suffers from a "medically determinable physical or

21  mental impairment which can be expected to result in death or which has lasted or can be expected

22  to last for a continuous period of not less than twelve months," and (2) the "impairment or

23  impairments are of such severity that he is not only unable to do his previous work but cannot,

24  considering his age, education, and work experience, engage in any other kind of substantial

25  gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-

26  step analysis for determining whether a claimant is disabled within the meaning of the Social

27

28  _____
    [90] AR 531.

United States District Court
Northern District of California

Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two**. Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends the ALJ erred by (1) rejecting the VA findings, (2) failing to give proper weight to the medical evidence, (3) improperly assessing the plaintiff's RFC, (4) discrediting the plaintiff's pain and limitations testimony, and (5) discrediting the testimony of his wife.

For the reasons below, the court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands for further proceedings consistent with this order.

### 1. Whether the ALJ Erred in Weighing the VA's Disability Rating

The plaintiff contends that the ALJ erred by giving less than great weight to the VA's disability determination without providing persuasive, specific, and valid reasons.[91] The court remands on this ground.

An ALJ must consider the VA's disability finding in reaching her decision regarding a claimant's disability. *McCartey v. Massanari*, 298 F. 3d 1072, 1076 (9th Cir. 2002). Generally, an ALJ "must give great weight to a VA determination of disability" because:

> both programs serve the same governmental purpose — providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. *Id.* (internal citations omitted)

A VA determination is not binding, though, and an ALJ may give less weight to a VA disability rating if she "gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)).

The parties agree that the ALJ gave the VA's determination less than great weight.[92] Thus, the ALJ was required to provide persuasive, specific, and valid reasons for doing so. The ALJ's three reasons were not persuasive.

First, the ALJ found that "[t]he longitudinal medical record does not document persistent problems related to PTSD prior to the date last insured."[93] But the date last insured was June 30, 2015, and the plaintiff received a positive PTSD screen on April 18, 2011.[94] Additionally, the VA relied on specific, objective evidence to support its PTSD findings, reviewing the entire claim file and a VA mental examination from March 13, 2014.[95]

---

[91] Mot. – ECF No. 24 at 17.

[92] Mot. – ECF No. 24 at 14; Cross-Mot. – ECF No. 26 at 3.

[93] AR 530.

[94] AR 457.

[95] *Id.*; AR 173.

1    Second, the ALJ said that VA records from around the last insured date indicated "the claimant

2    was doing well psychiatrically" and his screening exams were negative for depression and

3    PTSD.[96] There was one negative PTSD screen on November 13, 2015.[97] But it is not persuasive to

4    rely on a single negative PTSD screen when the VA relied on objective evidence from the entire

5    claim file, including a positive 2011 PTSD screen.

6    Finally, the ALJ asserted that LCSW Ward "did not provide session treatment notes or

7    objective findings in support of total disability based on mental impairment."[98] But LCSW Ward's

8    treatment statements are from October 2016, a year and a half after the VA's disability

9    determination. Because the VA could not have relied on those treatment statements, and the ALJ

10   did not indicate why they are relevant to giving less weight to the VA's determination, the ALJ's

11   reasoning is unpersuasive.

12   In sum, the ALJ erred by failing to provide persuasive reasons for giving less than great weight

13   to the VA determination. The court remands on this basis.

14

15   **2.   Whether the ALJ Erred in Weighing Medical-Opinion Evidence**

16   The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving

17   ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). In weighing and evaluating

18   the evidence, the ALJ must consider the entire case record, including each medical opinion in the

19   record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*,

20   495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole

21   and may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

22   "In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that

23   guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528

24

25

26   ───────────────────

[96] AR 530.

27   [97] AR 390.

28   [98] AR 530.

United States District Court
Northern District of California

178 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[99] Social Security regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

"To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (cleaned up). By contrast, if the ALJ finds that the opinion of a treating or examining physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (cleaned up). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631

---

[99] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, governs based on the plaintiff's filing date in March 2015.

United States District Court
Northern District of California

1   (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th

2   Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can

3   consider some portions less significant than others).

4   The plaintiff first contends that the ALJ erred by giving "limited weight" to Dr. Andrus's

5   opinion. The court agrees.

6   First, the ALJ found that Dr. Andrus's opinion was overly restrictive and inconsistent with

7   medical imaging showing improvement in the plaintiff's back.[100] This finding was not supported

8   by substantial evidence in the record, because it relied on an x-ray and the ALJ did not indicate

9   that the plaintiff's back pain is caused by issues that would be captured by an x-ray. As the

10   plaintiff noted, "x-rays evaluate bone structures such as kneecaps and vertebrae; MRI[s] evaluate

11   soft tissues such as tendons and vertebral discs."[101] Additionally, the ALJ did not point to any

12   imaging that directly contradicts the March 21, 2011 MRI that uncovered "multiple disc

13   protrusions . . . contribut[ing] to multilevel central canal stenosis."[102]

14   Second, the ALJ said that Dr. Andrus's opinion is inconsistent with the plaintiff's activities of

15   daily living, such as "regular exercise," "taking care of his children, driving his children to school,

16   grocery shopping, and preparing meals."[103] But this finding was conclusory; the ALJ did not

17   explain why these activities are inconsistent with Dr. Andrus's opinion, which was error.

18   Finally, the ALJ found that there is evidence of conservative treatment in the record but again,

19   this finding was conclusory.

20   The plaintiff also contends that the ALJ erred by giving "limited weight" to PsyD Samuelson's

21   opinion without providing specific and legitimate reasons for doing so.[104] The court remands on

22   this ground.

23

24

25   [100] AR 529.

26   [101] Mot. – ECF No. 24 at 22.

27   [102] AR 415.

     [103] AR 529.

28   [104] Mot. – ECF No. 24 at 23.

United States District Court
Northern District of California

First, as above, the ALJ found that PsyD Samuelson's opinion was inconsistent with the plaintiff's activities of daily living.[105] But again, this finding was conclusory, which was error.

Second, the ALJ found that PsyD Samuelson's opinion — that the plaintiff needs a structured work environment — is inconsistent with plaintiff's negative depression and PTSD screenings around the date last insured. But the ALJ did not explain why those screenings are inconsistent with the plaintiff's need for a structured work environment, and this failure to explain was error.

In sum, the ALJ erred in weighing the medical evidence as to Dr. Andrus and PsyD Samuelson, and the court remands on this ground.

### 3.   Whether the ALJ Erred by Improperly Assessing the Plaintiff's RFC

The plaintiff contends that the ALJ did not consider all of the plaintiff's medically documented impairments.[106] Because the court remands for reconsideration of the medical-opinion evidence, and because the RFC was based partly on the medical record, the court remands on this ground too.

### 4.   Whether the ALJ Erred by Discrediting Plaintiff's Pain and Limitations Testimony

The plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons to reject his testimony.[107] The court agrees.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112 (9th Cir. 2012). "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (cleaned up). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* (cleaned up).

---

[105] AR 529.

[106] Mot. – ECF No. 24 at 23–24.

[107] *Id.*

"Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (cleaned up). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-00674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

In order to have a meaningful appellate review, the ALJ must explain its reasoning and "*specifically identify* the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) ("Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing.") (cleaned up). "That means [g]eneral findings are insufficient." *Id.* at 1102; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."). Moreover, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

The ALJ held that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and did not cite any evidence of malingering.[108] Thus, the ALJ was required to provide specific, clear, and convincing reasons for rejecting the plaintiff's testimony. The ALJ discredited the plaintiff's testimony because of inconsistencies with the plaintiff's daily living activities.[109] But the ALJ failed to identify what specific testimony from the plaintiff was not credible, which was error warranting remand.

---

[108] AR 528.

[109] *Id.*

### 5.   Whether the ALJ Erred by Discounting the Plaintiff's Wife's Testimony

The plaintiff contends that the ALJ did not provide germane reasons for discounting the opinion testimony of the plaintiff's wife.[110] The court remands on this ground.

The ALJ must consider "other source" testimony and evidence from a layperson. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.") (cleaned up). "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). This kind of lay witness testimony is competent evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Moreover, if an ALJ decides to disregard the testimony of a lay witness, the ALJ must provide "specific" reasons that are "germane to that witness." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (internal citations omitted). The Ninth Circuit has not "required the ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis" — the ALJ may "point to" reasons already stated with respect to the testimony of one witness to reject similar testimony by a second witness. *Molina*, 674 F.3d at 1114.

The ALJ gave the plaintiff's wife's testimony limited weight, finding it (1) "cumulative" with the plaintiff's allegations, (2) "overly restrictive and inconsistent with the objective medical evidence, the claimant's activities, and conservative treatment," and (3) "from a nonmedical source and reflect[ive of] a subjective lay opinion."[111]

Because the court remands for the ALJ to reconsider the plaintiff's testimony and the medical-opinion evidence, the court remands on this ground, too.

---

[110] Mot. – ECF No. 24 at 27.

[111] AR 528.

United States District Court
Northern District of California

**6.   Whether the Court Should Remand for Further Proceedings or Determination of Benefits**

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."). "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (cleaned up).

Here, remand is appropriate to "remedy defects in the original administrative proceeding." *Id.*

### CONCLUSION

The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: February 3, 2022

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California